IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAY JASMINE SADDLER,

                Plaintiff,

v.

JESSICA HEWITT, BETHANY HAMMEL,              OPINION and ORDER
RILEY VOGEL, EDWARD BREITSPRECKER,
ANDREW SMITH, MASON NEMITZ,                     19-cv-81-jdp
MICHELLE NECOLLINS, BRIAN QUICK,
KESSA KLAAS, NAKIA HERRINGTON,
KEITH JOHNSON, and CARMEN ZACHARIAS,

                Defendants.

---

Pro se plaintiff Jay Jasmine Saddler, a prisoner at Waupun Correctional Institution, is proceeding on Eighth and Fourteenth Amendment claims based on allegations that numerous jail and prison officials failed to provide proper medical care for an injury to his left hand.

The question before the court is whether Saddler has exhausted his administrative remedies, as required under the Prison Litigation Reform Act. The state prison defendants (Nakia Herrington, Keith Johnson, and Carmen Zacharias) have filed a motion for summary judgment based on Saddler's failure to exhaust his administrative remedies. Dkt. 74. The county jail defendants (the nine other defendants in the case) also move for summary judgment on exhaustion grounds. Dkt. 93. Saddler opposes both motions, and he has filed his own motions for partial summary judgment seeking a declaration that he has exhausted his claims. Dkt. 96 and Dkt. 115.

The evidence shows that Saddler failed to exhaust his administrative remedies against both the state and county defendants, So I will grant defendants' motions, deny Saddler's motions, and dismiss the case.

ANALYSIS

The Prison Litigation Reform Act (PLRA) requires a prisoner confined in any jail, prison, or other correctional facility to exhaust all available administrative remedies before challenging conditions of confinement in federal court. 42 U.S.C. § 1997e(a). The purpose of this requirement is not to protect defendants but to give prison officials an opportunity to resolve complaints without judicial intervention. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 537–38 (7th Cir. 1999) (exhaustion serves purposes of "narrow[ing] a dispute [and] avoid[ing] the need for litigation"). Failure to exhaust administrative remedies under § 1997e(a) is an affirmative defense that must be proven by the defendants. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018).

Administrative exhaustion requires "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issue on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). This means that a prisoner needs to "file complaints and appeals in the place, and at the time, the [agency's] administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Saddler has sued both state and county officials, so his claims implicate both state and county administrative grievances processes.

A. **Exhaustion of state administrative remedies**

    1. **Wisconsin's administrative exhaustion process**

Prisoners incarcerated in the state prison system must exhaust administrative remedies by following the procedures outlined in section DOC 310 of the Wisconsin Administrative Code, which establishes the "inmate complaint review system" (ICRS). ICRS requires that an inmate first attempt to resolve his grievance through designated informal channels before filing a formal complaint. Wis. Admin. Code. § DOC 310.07(1). If that proves unsuccessful, the

inmate must "file a complaint within 14 days after the occurrence giving rise to the complaint." Wis. Admin. Code. § DOC 310.07(2). Once a complaint is filed, the institution complaint examiner (ICE) either rejects the complaint for one of the nine reasons listed in the Code, *see* Wis. Admin. Code. § DOC 310.10(6), or sends a recommended complaint disposition to the appropriate reviewing authority. Wis. Admin. Code. § DOC 310.10(1). If the reviewing authority dismisses the complaint, the inmate may appeal the dismissal up the chain until he reaches the secretary of the Department of Corrections. Wis. Admin. Code. §§ DOC 310.12, 310.13. Once the secretary decides the appeal, the agency's "decision is final," at which point the prisoner will have fully exhausted his administrative remedies. Wis. Admin. Code. § DOC 310.13(3).

**2. Saddler's complaint-filing history**

Saddler's claims against the state defendants arise in two prisons. From March 23, 2017 to July 3, 2017, Saddler was confined at Dodge Correctional Institution (DCI), where he alleges that defendants Zacharias and Johnson failed to ensure that he received medical care that he needed for a knife injury to his hand. From July 3, 2017 to March 23, 2018, Saddler was confined at Racine Correctional Institution (RCI), where he alleges that defendant Herrington ignored Saddler's requests for follow-up care. After that, Saddler was transferred to Waupun Correctional Institution (WCI), where he is currently confined. Zacharias, Johnson, and Herrington contend that the claims against them must be dismissed because Saddler didn't file any complaints relating to the medical treatment of his hand injury until almost a year after his transfer to WCI, and the complaints he filed at WCI weren't sufficient to exhaust the claims at issue in this case.

The state defendants provide a copy of Saddler's ICRS complaint filing history, Dkt. 79-1, which confirms their account. Saddler filed several complaints in 2017 and 2018 (when the events giving rise to his claims against Zacharias, Johnson, and Herrington took place), but he made no mention of his hand injury until March 4, 2019, when he filed complaint no. WCI-2019-4267. In that complaint, Saddler listed an incident date of March 1, 2019, and he complained that he was being ignored by healthcare staff at WCI. *See* Dkt. 79-2, at 7 (listing "Mark Jensen," "HSU Marchang," "York," and "Doctor Jean Pierre"). He did not mention Zacharias, Johnson, or Herrington, nor did he discuss the treatment he had received while incarcerated at DCI or RCI. Ultimately the complaint was dismissed after the ICE determined that it did "not appear that inmate Saddler's health care concerns are being ignored." *Id.* at 2. Saddler did not appeal the dismissal.

Several months passed, during which Saddler filed additional complaints regarding issues unrelated to health care. Then on September 5, 2019, Saddler submitted a second complaint about his hand injury, WCI-2019-16228. He listed August 23, 2019 as the incident date, and he complained that "it's been 2 weeks [of] delayed medical care and 2 months [of] waiting for assigned doctor to see [him]. . . . Hope to be helped." Dkt. 79-3, at 11. At the bottom of the form under the section asking for "details surrounding the complaint," Saddler wrote: "The original[] H.S.U of Dodge evaluation and surrounding also the Racine Correctional Nurses and staffs including doctor there of original[] observations. This is an ongoing issue that has not been de[a]lt with." *Id.* The ICE returned the complaint for containing more than "one clearly identified issue," in violation of § DOC 310.07(5). He instructed Saddler to clarify and resubmit the complaint, which Saddler did. This time, Saddler didn't mention DCI, RCI, or the fact that his complaint concerned an ongoing issue. *See* Dkt. 79-3, at 12 (stating "I been

4

denied medical attention!! For left hand. Want surg[ery]"). The ICE accepted and investigated the amended complaint, but he ultimately recommended that it be dismissed. *Id.* at 2. Saddler appealed the dismissal all the way to the Office of the Secretary, which affirmed the dismissal on November 5, 2019. *See* Dkt. 79-3. In the meantime, Saddler had filed claims against the state defendants in this case. *See* Dkt. 25 (amended complaint filed September 17, 2019).

### 3. Saddler's arguments regarding exhaustion

Saddler doesn't dispute the state defendants' account of his complaint-filing history. But in his opposition brief, he argues both that he successfully exhausted his administrative remedies, and that the administrative process was unavailable to him for various reasons.

Saddler contends that his two injury-related ICRS complaints were sufficient to exhaust his claims. Saddler didn't appeal the dismissal of WCI-2019-4267, so that complaint can't have exhausted any claims. Saddler did appeal the second complaint, WCI-2019-16228, all the way to the Office of the Secretary, but he filed suit against the state defendants before that appeal had concluded, which means that ICRS complaint didn't exhaust any claims for purposes of this case. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (dismissal is required when a prisoner files federal lawsuit before completing the exhaustion process).

Even setting aside these procedural problems, neither of Saddler's complaints were sufficient to put defendants on notice that Saddler was alleging a continuing pattern of disregard for his hand injury dating back to 2017. Both injury-related complaints were filed long after Saddler's transfer to WCI, and neither one discussed what Saddler had experienced at DCI or RCI. Although Saddler mentioned DCI and RCI in his initial attempt at filing WCI-2019-16228, that complaint was returned, and Saddler did not discuss DCI or RCI in the version of the complaint that was ultimately accepted for investigation, decided on the merits,

5

and appealed up to the DOC secretary. Proper exhaustion requires strict compliance with prison's administrative rules, including the requirement that a complaint clearly identify a single issue. Saddler's complaint did not notify reviewing officials that the grievance he was raising dated back to his time at DCI and RCI.

Saddler also argues that he should be deemed as having exhausted his claims because the defendants in question had actual knowledge of his medical needs. But that doesn't excuse Saddler's non-compliance with the administrative process. *See, e.g., Richmond v. Sauvey*, No. 18-cv-530, 2018 WL 4100537, at *4–6 (E.D. Wis. Aug. 28, 2018). The administrative exhaustion requirement is about more than simply putting officials on notice of inmate grievances; it gives prison officials an opportunity "to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005). Saddler gave prison officials no opportunity to resolve his grievance administratively, so he failed to comply with the exhaustion requirement.

Saddler suggests that the administrative exhaustion process was unavailable to him. An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, --- U.S. ----, 136 S. Ct. 1850, 1858, 195 L.E.2d 117 (2016). An administrative scheme can be unavailable to a prisoner if, for example, the prison fails to accept or acknowledge a prisoner's grievances, or constructs an administrative scheme "so opaque that it becomes, practically speaking, incapable of use." *Id.* at 1859.

Here, Saddler contends that the administrative process was unavailable to him for three reasons. First, he says that he attempted to file grievances about his hand earlier, but he couldn't because his hand injury made it too hard to write. Dkt. 103, at 2. But Saddler filed six ICRS complaints prior to filing any complaint about his hand, *see* Dkt. 79-1, so the injury

6

doesn't appear to have prevented him from making use of the administrative process. Second, Saddler contends that he wasn't able to exhaust because he was transferred between different correctional institutions. But he doesn't explain why these transfers prevented him from filing complaints. And Saddler's complaint filing history shows that he used the ICRS system to complain about unrelated issues before he was transferred to WCI. Third, Saddler alleges that DOC officials "attempted to sabotage plaintiff" by telling him "not to file I.C.E. on the matter because it would be t[a]ken care of." Dkt. 103, at 10. But he provides no details about who told him this, when these remarks were made, or in what context. "Rule 56 demands something more specific than the bald assertions of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016) (citation omitted). Saddler hasn't provided that here, so he has not demonstrated that the ICRS process was unavailable to him.

Because the state defendants have met their burden of demonstrating Saddler's failure to exhaust, I will grant the state defendant's summary judgment motion, deny Saddler's cross-motion, and dismiss Saddler's Eighth Amendment claims. *See Perez*, 182 F.3d at 535 ("[A] suit filed by a prisoner before administrative remedies have been exhausted *must* be dismissed; the district court lacks discretion to resolve the claim on the merits . . . ." (emphasis added)).

**B. Exhaustion of county administrative remedies**

That leaves Saddler's Fourteenth Amendment claims against the nine Grant County defendants. Saddler alleges that these defendants ignored his hand injury in various ways, such as by refusing to provide him with pain medication or medical supplies or failing to ensure that he received appropriate follow-up treatment. The county defendants contend that Saddler

failed to use the administrative remedies available through the Grant County Jail's grievance process.

### 1. Saddler's complaint filing history

The county defendants don't provide a copy of the procedures governing their administrative grievance process, and they provide only a sparse declaration about it. *See* Dkt. 95. It's not clear whether there's a process for appealing an adverse decision to the sheriff, nor is there any discussion of how inmates are made aware of the grievance process. Nonetheless, the declaration makes clear that exhausting a claim in Grant County Jail requires at a minimum that inmates submit a form labeled "Inmate Grievance Form" to the appropriate authorities. The county defendants assert that Saddler filed five such forms over the course of his detention at the jail, but that none of them addressed Saddler's dissatisfaction with the treatment he was receiving for his hand injury.

A review of those complaints bears this out. On November 28, 2016, Saddler filed a grievance complaining that he had "not been given [his] mental health medicine." Dkt. 95, at 11. Saddler filed the other four grievances on December 12, 2016. In the first, he complained that a non-defendant had written him a ticket that he didn't believe was warranted. *Id.* at 12. In the second, he said that he hadn't "had [his] psych meds for a while" and was afraid that the non-defendant was going to sabotage his food. *Id.* at 13. In the third, he said that he was in pain because he'd been forced to defend himself in a fight while being "handicapped" from a prior injury. *Id.* at 14. In the fourth, he complained that defendant Riley Vogel had allowed a fight between Saddler and another inmate to break out. *Id.* at 15. None of the five grievances contain any specific mention of Saddler's hand injury or his dissatisfaction with the care being provided by the county defendants.

### 2. Saddler's arguments regarding exhaustion

As with the state defendants, Saddler doesn't dispute the accuracy of county defendants' account of his complaint-filing history. He instead argues once again that he successfully exhausted his administrative remedies, and that the administrative process was unavailable to him.

Saddler contends that he successfully exhausted his Fourteenth Amendment claims by filing the December 12, 2016 grievance about being forced to defend himself in a fight while "already being handicap[ped] from [a] prior injur[y] sustained before[e] com[]ing here." *Id.* at 14. Saddler says that the reference to a prior injury was "clearly an assertion pertaining to the Cook County but[c]her knife wound." Dkt. 116, at 7. But simply stating in passing that one has an injury is not the same thing as complaining that jail staff have failed to address that injury. Nothing about Saddler's grievance would have put defendants on notice that he was dissatisfied with the medical care he was receiving for his hand. Indeed, on the part of the form that asked Saddler what the jail could do to solve his problem, Saddler wrote that he "would like [the] jail to co[o]perate with [his] lawyer when he comes to talk to [the] jail." Dkt. 95, at 14. This suggests that Saddler was concerned with addressing potential legal ramifications of the fight, not with obtaining medical care.

Saddler's contention that the jail's administrative grievance process was unavailable to him boils down to two arguments. First, Saddler says that he "was not made aware of [the] exhaustion grievances procedures [at the] Grant County Jail." Dkt. 116, at 7. Once again, that assertion is contradicted by the record, which shows that Saddler filed five grievances over the course of his detention, including grievances about other health care issues. *See* Dkt. 95, at 11, 13 (complaining about lack of access to psychiatric medications). Second, Saddler says that

the county defendants, like the state defendants, tried to "sabotage [him] . . . the entire four months [he was] detained at the Grant [County] Jail" by attempting to deter him from filing grievances. *Id.* at 10. But once again, Saddler provides no affidavit detailing specific, concrete facts about who told him this, when they told him this, or in what context these remarks were made. His conclusory assertions aren't sufficient to raise a genuine issue about the misconduct he alleges.

The county defendants, like the state defendants, have met their burden of demonstrating Saddler's failure to exhaust, so I will grant their summary judgment motion, deny Saddler's cross-motion, and dismiss Saddler's Fourteenth Amendment claims. Because there are no claims remaining, I will direct the clerk of court to enter judgment for defendants and close the case. That dismissal will be without prejudice. *See Ford*, 362 F.3d at 401 (dismissal for failure to exhaust is always without prejudice). Although the dismissal is without prejudice, Saddler likely will not be able to exhaust his claims against the defendants in this case because any future grievances would be untimely.

ORDER

IT IS ORDERED that:

1. The state defendants' motion for summary judgment, Dkt. 73, is GRANTED. Plaintiff Jay Jasmine Saddler's cross-motion for partial summary judgment, Dkt. 96, is DENIED.

2. The county defendants' motion for summary judgment, Dkt. 93, is GRANTED. Plaintiff's cross-motion for partial summary judgment, Dkt. 115, is DENIED.

3. This case is DISMISSED without prejudice for plaintiff Saddler's failure to exhaust his administrative remedies. The clerk of court is directed to enter judgment and close this case.

Entered July 8, 2020.

                                                    BY THE COURT:

                                                    /s/

                                                    _____

                                                    JAMES D. PETERSON
                                                    District Judge